**Byron Q. ALSTON,**
**Petitioner–Appellant,**

v.

**STATE of Indiana,**
**Respondent–Appellee.**

No. 49A02–8612–PC–428.

Court of Appeals of Indiana,
First District.

April 25, 1988.

Rehearing Denied June 9, 1988.

Susan K. Carpenter, Public Defender, Hope Fey, Deputy Public Defender, Indianapolis, for petitioner-appellant.

Linley E. Pearson, Atty. Gen., Cheryl L. Greiner, Deputy Atty. Gen., Indianapolis, for respondent-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Petitioner-appellant, Byron Q. Alston (Alston), appeals the denial by the Marion Superior Court, Criminal Division Two, of his petition for relief under Ind. Rules of Procedure, Post–Conviction Rule 1.

We affirm.

## STATEMENT OF THE FACTS

Alston, age 18 years, was charged by Information on January 11, 1982, with two Class A felonies. He was charged in Count I with kidnapping while armed with a deadly weapon (a knife), and in Count II, he was charged with robbery with a deadly weapon (a knife), resulting in bodily injury. The presumptive sentence for a Class A felony is 30 years, to which could be added 20 years for aggravating circumstances and from which could be subtracted 10 years for mitigating circumstances.

After extensive discovery, a written plea agreement was entered into and signed by Alston and his attorney, the terms of which provided that he would enter a plea of guilty to simple robbery, a Class B felony, and the State would recommend an executed sentence of 10 years. The presumptive sentence for a Class B felony is 10 years, to which could be added 10 years for aggravating circumstances and from which could be subtracted 4 years for mitigating circumstances. The plea agreement recited that Alston understood that he had a right to: (1) a public trial by jury; (2) confront and cross-examine the witnesses against him; (3) have compulsory process for obtaining witnesses; and (4) require the State to prove his guilt beyond a reasonable doubt. In addition, he acknowledged that he understood; (5) that by entering a plea of guilty he would waive these rights; (6) that by entering a plea of guilty, he would admit to the truth of the facts stated in the Information; (7) that he was satisfied with his attorney; and (8) that he believed that entering a plea of guilty was in his best interest.

At the guilty plea hearing, wherein he was accompanied by his attorney, Alston acknowledged that he had attended school twelve years and lacked only one credit from graduating. He stated that he could read and write, had read the plea agreement, initialed each of its provisions, discussed it with his attorney, and understood it. In answer to the trial court's questions, he stated that he understood his rights, had no complaint against his attorney, and entered into the plea agreement of his own free will. The court read to him the Information and advised him of the presumptive, maximum, and minimum penalty for simple robbery. The trial court further advised him that by his plea of guilty, Alston was giving up his right to a jury trial, right to subpoena and cross-examine witnesses, right to remain silent, right to have the State prove his guilt beyond a reasonable doubt, and if he went to trial, he would not be required to prove anything. Alston acknowledged that he understood these advises.

The trial court made a factual determination which disclosed that Alston approached a 24–year–old woman in the Lafayette Square parking lot at 2:15 p.m., flashed a butcher knife at her, shoved her into her car, got in, and drove off with her. Acquiescing to his threats, she agreed to cash a check at a bank drive-in. The first drive-in refused, but the second drive-in bank cashed her check. Alston then put her out of the car and left with it, her money, her purse, and her other personal belongings. Later he was caught driving the victim's automobile.

The pre-sentence investigation report reflected that Alston had a juvenile record consisting of arson, two instances of theft, disorderly conduct, public intoxication,

criminal trespass, shoplifting, conspiracy to commit robbery, resisting arrest, and robbery. On April 10, 1982, in accordance with the plea agreement, the court imposed the agreed presumptive sentence of 10 years.

On April 22, 1982, Alston filed a pro se petition for shock probation which was denied. On July 8, 1982, he filed a petition to modify his sentence which was also denied. His motion to reconsider that latter petition, filed on August 26, was likewise denied.

On October 7, 1982, Alston, pro se, filed a post-conviction petition, denominated by us as PCR I, which alleged: (1) misconduct of his attorney at trial; (2) incompetency of his attorney at trial; (3) violation of his constitutional rights; and (4) he did not understand the proceedings. After several continuances requested by Alston, then represented by a public defender, the petition was heard on December 2, 1982, and denied. Through the public defender's office, Alston filed his petition for leave to file a belated motion to correct errors on PCR I on June 28, 1983, which was granted. However, the belated motion to correct errors was denied, and the ensuing appeal questioning counsel's performance during plea negotiations was denied on September 6, 1984 in *Alston v. State*, 467 N.E.2d 809 (Ind.App.), an unpublished opinion.

Meanwhile, on April 22, 1983, Alston had filed yet another pro se petition for sentence modification which was denied.

After the opinion on PCR I was handed down, Alston, on April 8, 1984, through the public defender's office, filed another petition for post-conviction relief denominated by us as PCR II charging: (1) denial of due process; (2) misconduct of the prosecuting attorney; (3) violation of the 5th, 6th, and 14th amendments; and (4) that his confession was coerced. After PCR II was set for hearing on December 13, 1984, and he was transported to the Marion County Jail, Alston, on December 7, 1984, dismissed PCR II without prejudice. On that same day he filed yet another post-conviction petition denominated by us as PCR III, in which he charged: (1) misconduct of his

attorney at trial; (2) incompetency of counsel; (3) violation of his constitutional rights; and (4) he did not understand the proceedings. After continuances sought by Alston, he dismissed PCR III without prejudice on March 8, 1985.

Finally, on March 6, 1986, he filed, pro se, the petition for post-conviction relief here under consideration, which we shall denominate as PCR IV. In PCR IV he alleges: (1) he wanted his prison sentence reduced; (2) he was promised 8 years instead of 10 years by his attorney; (3) he had served 5 out of 10 years; and (4) he did not understand the proceedings. After the public defender's office appeared in his behalf, PCR IV was amended to add that the guilty plea was not entered freely and voluntarily because the trial court had not advised him; (5) that the court was not a party to the plea agreement and was not bound by it; (6) that the plea of guilty acted as an admission of the facts alleged in the Information; and (7) that by entering a plea of guilty he waived his right to a public and speedy trial. After a hearing conducted on August 18, 1986, PCR IV was denied. It is to be noted that the plea agreement contained a sentence initialed by Alston, which advised him of his right to a public trial by jury, and that if he pleaded guilty he would be admitting the facts alleged in the Information. At the guilty plea hearing, the trial court advised him of his right to a jury trial.

## ISSUES

Alston raises three issues which we will discuss together. They are as follows:

I. Whether Alston's conviction for robbery violated due process of law as guaranteed by the sixth and fourteenth amendments to the U.S. Const., art. I, §§ 12 and 13 of the Indiana Const., and Indiana law.

II. Whether the lower court erred by concluding Alston was afforded the effective assistance of counsel during previous post-conviction proceedings.

III. Whether the lower court erred and abused its discretion by finding Al-

ston had waived his grounds for post-conviction relief.

## DISCUSSION AND DECISION

Alston first claims that at the guilty plea hearing the trial court failed to give him the advisements required by IND. CODE 35-4.1-1-3 by not informing him of the three advisements contained in allegations (5), (6), and (7) of PCR IV set forth above. He correctly argues that under *German v. State* (1981), Ind., 428 N.E.2d 234, such omissions would be fatal requiring that the guilty plea be set aside. However, *German* has been superceded by *White v. State* (1986), Ind., 497 N.E.2d 893 which eased the draconian requirements of *German*. *White* places an additional burden on a defendant to show that the omitted advisements prejudiced him. He is now required to allege and prove that his plea would have been different had he known and understood the advisements. This Alston has not done. *White* is retroactive and governs matters occurring in the time frames involved here. *Patton v. State* (1987), Ind.App., 507 N.E.2d 624. In fact, *White* itself had retroactive application.

Alston next claims that PCR I was filed, determined, and appealed during a time that the rule in *German* prevailed. Therefore, if counsel, also from the public defender's office, had raised these three omitted advisements required by IND.CODE 35-4.1-1-3, PCR I would have been successful. Therefore, counsel in PCR I was incompetent, and PCR IV, addressing the matter of incompetency of counsel in PCR I, should be granted.

We have set out the record in detail which illustrates the extreme abuse existing in post-conviction proceedings which *White* attempted to ameliorate. A full and open guilty plea hearing was held wherein Alston was represented by counsel. The factual determination conducted by the court fixed his guilt beyond question. In addition to the facts presented by the State, Alston admitted in open court that he had kidnapped, tormented, terrorized, and robbed the 24-year-old woman in midday at a shopping mall. In fact he was later caught driving her car. Counsel negotiated a plea agreement by which two Class A felonies, each carrying potential penalties of up to 50 years, were reduced to 10 years. The pre-sentence investigation report disclosed that Alston possessed violent antisocial tendencies. Under P.C.R. 1 § 10, as it existed prior to January 1, 1986, and *Ballard v. State* (1974), 262 Ind. 482, 318 N.E.2d 798, Alston could never receive a sentence greater than 10 years, even if the guilty plea to the reduced charge was set aside and he was subsequently convicted upon the two Class A felonies. P.C.R. 1 § 10, as interpreted by *Ballard*, afforded a criminal defendant a means by which he could agree to a lesser charge and sentence and then with inpunity commence to attack the plea. P.C.R. 1 § 10 was amended on January 1, 1986, to insert provisions which could be utilized to impose the maximum sentence that was previously available.

Immediately, within 12 days of the sentencing, Alston mounted his attack upon the guilty plea which was entered pursuant to his most favorable agreement. That attack has continued unbated to the present time. As seen, his principal theme is accusations against his attorneys. Nowhere in the substantial record generated since March 16, 1982, has Alston claimed that he did not kidnap, torment, terroize, and rob the victim.

Instead, the argument advanced by Alston, as well as the views expressed by the dissenting opinion, posits, essentially, that criminal justice demands a liturgy, a ritual, and if the trial court performs the required incantations flawlessly, then justice is done. Should the court, in the turmoil of a crowded metropolitan court room, omit any part of the rite, then the defendant is considered to have been denied fundamental rights. What a defendant knew, what his attorney told him, his obvious guilt admitted in open court, are not relevant considerations. Such doctrine made all convictions suspect and over burdened the judiciary to the brink of collapse. Those views were wholly discredited in *White*. Now, underlying merit must be shown. A defendant bears the burden of showing by the whole

record that the omissions made a difference in his decision to enter a plea.

■ PCR IV itself addressed the original guilty plea and did not attack PCR I. The attack on PCR I occurred in argument. An examination of the rule clearly discloses that a post-conviction petition and remedy is addressed solely to the original conviction or plea of guilty. There is nothing within the rule that indicates that a post-conviction petition may be addressed to a prior post conviction proceeding. Alston cites no authority that so holds. If counsel is inadequate at a prior post-conviction proceeding, a remedy would be to allow the defendant to start over. However, his new efforts must still be addressed to events occurring at the trial or guilty plea hearing, and the issues would be determined by prevailing law as though no prior PCR had been filed. In this instance, *White* retroactively applied, is determinative and governs the original proceedings attacked in PCR IV.

We decline to take a step backward and create a new vehicle by which a defendant could use a PCR to attack a previous PCR on the grounds of incompetency of counsel in that PCR hearing, and then use yet a third PCR to attack the competency of counsel of the second PCR and so on in perpetuity.

We believe our decision is within the spirit of *White,* which restricts repetitive attacks on criminal convictions on purely formalistic grounds. Because of our decision here, we decline to address the waiver argument, though we believe waiver exists. This cause is affirmed.

Judgment affirmed.

BUCHANAN, J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

The trial court accepted Alston's plea of guilty on April 16, 1982, without having given him all of the advisements required by I.C. 35–4.1–1–3 (repealed 1981). Specifically, the court failed to advise him that by a plea of guilty he admitted the truth of all facts alleged in the information and waived his right to a public and speedy trial. Neither did the court advise him that it was not a party to nor bound by any plea agreement that the parties had reached. On August 16, 1983, the court denied Alston's petition for post-conviction relief which failed to allege these omitted advisements. This denial was affirmed upon appeal. Alston again sought post-conviction relief contending that he was denied effective assistance of counsel at his first post-conviction relief hearing because his counsel failed to raise the issue of the omitted advisements. Denial of relief is the focus of this appeal.

Pursuant to Ind. Rules of Procedure, Post–Conviction Rule 1, § 8, all grounds for relief must be raised in the original petition unless good cause is demonstrated. In *Wells v. State* (1985) 1st Dist.Ind.App., 482 N.E.2d 786, the defendant was denied post-conviction relief because he failed to present the grounds in his first petition. The court noted that Wells had no excuse for this default:

"Wells does not even attempt to justify this procedural default. Most notably, he does not allege ineffective assistance of appellate counsel in his present petition." *Id.* at 788.

The suggestion is apparent that had Wells alleged ineffective assistance, such would have been sufficient reason to entertain the subsequent petition.

Alston has alleged ineffective assistance of counsel and therefore has at least facially set forth sufficient reason to consider the omitted advisements. The alleged ineffective assistance of counsel itself could not have been earlier raised because the deficient performance occurred at the first post-conviction relief hearing. An allegation of ineffective counsel at a post-conviction proceeding following a guilty plea, as here, is analogous to an allegation of ineffective counsel in a direct appeal as was the situation in *Wells, supra,* 482 N.E.2d 786.

In the case before us, the attorney who failed to present the guilty plea advisement defect at the first post-conviction proceed-

ing was the counsel who represented Alston at the guilty plea stage. The same attorney filed the belated motion to correct errors and the appellate brief which resulted in an affirmance of the denial of post-conviction relief. It tortures the concept of waiver beyond reason to hold Alston responsible for the failure of counsel to allege his own incompetence. In my estimation the allegation and demonstration of ineffective assistance was timely presented when, in the post-conviction petition and proceeding under review, the matter was alleged and demonstrated.

The majority appears to ignore that the crucial allegation in the appeal before us is ineffective assistance of counsel. If the doctrine of waiver were to be applied to every failure to raise an issue at the first possible opportunity, there could be no relief afforded if such failure were, as here, the result of counsel's ineffective representation and the matter were presented at the first opportunity by new counsel.

Post-Conviction Rule 1, § 8 provides:

"All grounds for relief available to a petitioner under this rule must be raised in his original petition. Any ground finally adjudicated on the merits or not so raised *and knowingly, voluntarily and intelligently waived* in the proceeding that resulted in the conviction or sentence, or *in any other proceeding the petitioner has taken to secure relief,* may not be the basis for a subsequent petition, unless the court finds a ground for relief asserted *which for sufficient reason was not asserted or was inadequately raised in the original petition.*" (Emphasis supplied.)

It clearly contemplates the situation before us. *See Patton v. State* (1987) 2d Dist.Ind. App., 507 N.E.2d 624, *trans. denied. See also Lombardo v. State* (1986) Ind., 499 N.E.2d 1075, in which our Supreme Court applied waiver to a second petition for post-conviction relief although counsel in the first post-conviction proceeding had been counsel for the guilty plea. However, the Supreme Court reversed denial of a third post-conviction petition with instructions to grant a change of judge. Such remand certainly contemplated that the new judge might appropriately consider the allegations of ineffective assistance of counsel *at the first post-conviction proceeding.* If such allegations were waived as a matter of law, as the majority here suggests, the remand to grant the change of judge would have been a meaningless expenditure of judicial resources.

*White* itself contains support for my view that there is no waiver in this situation. In affirming the trial court's denial of post-conviction relief, our Supreme Court clearly contemplated a subsequent petition which would withstand a claim of waiver:

"If appellant has any other basis upon which to establish that his plea was not voluntary and intelligent, he may file a new petition." 497 N.E.2d at 906.

The majority opinion today effectively erases this language from the Supreme Court's opinion in *White.* I believe that if such modification of the law is to be made it should be made by the Supreme Court.

The *White* standard places upon Alston the burden to show that the omission of the advisements prejudiced him. Alston has not alleged that his plea agreement would have been different had he known and understood the omitted advisements. Therefore, the majority is correct insofar as it holds this ground for relief insufficient to set aside the plea of guilty. However, such determination should not end our consideration of this appeal.

Alston also contends that his plea of guilty must be set aside and his conviction vacated because he was denied effective assistance of counsel. To evaluate Alston's claim of ineffective counsel, we must decide whether his counsel's performance was so deficient that he was not functioning as guaranteed by the Constitution, and if so, whether this deficient performance was so prejudicial as to deprive Alston of fundamental fairness. *Strickland v. Washington* (1984) 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Burse v. State* (1987) Ind., 515 N.E.2d 1383. To establish deficiency of his counsel's conduct, Alston must show "counsel's specific acts or omis-

sions which, viewed from the perspective of counsel at the time of the trial, fell below the standard of reasonable professional assistance." *U.S. v. Payne* (7th Cir.1984) 741 F.2d 887, 891. To satisfy the second requirement, Alston must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland, supra,* 104 S.Ct. at 2065.

Alston has established deficiency of his counsel's performance. At the first post-conviction relief hearing, Alston's counsel failed to raise the issue of the omitted advisements. At this 1983 hearing, the standard of review was that announced in *German* wherein omitted advisements were sufficient cause for granting post-conviction relief. *Sexton v. State* (1983) Ind., 455 N.E.2d 910; *Early v. State* (1983) Ind., 454 N.E.2d 416; *Brown v. State* (1982) 4th Dist.Ind.App., 435 N.E.2d 582. From the record, it appears clear that Alston's counsel was aware of the *German* standard at the time of the hearing, having filed a brief in *Early, supra,* which argued for relief under the *German* standard. His failure to argue for such relief for Alston constitutes deficient performance of counsel.

Alston also satisfies the second prong of ineffective assistance. But for his counsel's failure to argue the omitted advisements, Alston would have been granted post-conviction relief. The *German* standard, in effect at the time of Alston's first post-conviction relief hearing, provided that "it is the duty of the trial judge to comply strictly with the terms of Ind.Code § 35–4.1–1–3...." 428 N.E.2d at 236. Indiana Code 35–4.1–1–3 prohibited the court from accepting a plea of guilty without first addressing the defendant and

"(b) informing him that by his plea of guilty he is admitting the truth of all facts alleged in the indictment or information or to an offense included thereunder and that upon entry of such plea the court shall proceed with judgment and sentence;

(c) informing him that by his plea of guilty he waives his rights to a public and speedy trial by jury ...;
\* \* \* \* \* \*

(e) informing him that the court is not a party to any agreement which may have been made between the prosecutor and the defense and is not bound thereby."

The record before us clearly shows that the court did not give Alston these advisements before accepting his plea of guilty. Applying the *German* standard when these same advisements were omitted, Indiana courts have granted post-conviction relief. *Sexton, supra,* 455 N.E.2d 910 (omission of I.C. 35–4.1–1–3(b)); *Early, supra,* 454 N.E.2d 416 (omission of I.C. 35–4.1–1–3(e)); *Brown, supra,* 435 N.E.2d 582 (omission of I.C. 35–4.1–1–3(c) and (e)). Alston, also, would have been granted post-conviction relief but for his counsel's deficient performance. Alston has shown ineffective assistance of counsel.

It is not unreasonable for the law to place a premium upon finality and to discourage repetitive attempts to obtain judicial relief. However, the law in its current state affords one who has been convicted of crime an opportunity to fully and fairly present reasons why the conviction should be set aside. Even though a defendant may have had prior access to the appellate or post-conviction process, if through no fault of his own the opportunity has been frustrated, the system should not deny meaningful review. Justice may not be reluctantly or grudgingly administered.

I do not have, nor could I have, any quarrel with the observations of the majority concerning the existence of adequate factual basis for acceptance of Alston's guilty plea. Nor do I quarrel with the sentiment expressed by the majority which decries the fact that under *German,* many guilty pleas were set aside because the trial court failed to dot i's or cross t's.

The fact remains however that had counsel in the previous post-conviction proceeding presented the legal issue known by him to exist, the conviction of his client, Alston, would have been set aside. I cannot view this failure as other than an example of ineffective assistance of counsel.

I do not view it as a transgression upon the myriad cases which hold *White* to have retroactive application. I view it purely and simply as a case in which the defendant had ineffective assistance of counsel and in which that ineffective assistance resulted in demonstrated prejudice. But for the default of the attorney, Alston's guilty plea would have been vacated. That state of facts calls for a reversal.

I would remand with instructions to vacate the conviction, to set aside the guilty plea and for further proceedings upon the charges as originally filed and in contemplation of Ind. Rules of Procedure, Post-Conviction Rule 1, § 10(c)(1).