# In the

# United States Court of Appeals

## For the Seventh Circuit

—————————

No. 02-3921

EDWARD A. HAMMER,

*Petitioner-Appellant,*

v.

THOMAS E. KARLEN,

*Respondent-Appellee.*

—————————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 01 C 523—**J. P. Stadtmueller**, *Judge.*

—————————

ARGUED MAY 22, 2003—DECIDED SEPTEMBER 5, 2003

—————————

Before BAUER, KANNE, and ROVNER, *Circuit Judges.*

BAUER, *Circuit Judge.* For the reasons carefully enunciated in the order of the learned court below dated July 8, 2002, which we adopt as our own and append hereto, we AFFIRM the denial of Edward A. Hammer's petition for writ of habeas corpus.

## ORDER

On May 22, 2001, Edward Hammer filed with this court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his March 30, 1998, Wisconsin state court convictions for fourth degree sexual assault and second degree sexual assault of a child. He raises two arguments,

each of which were previously presented to the Wisconsin Court of Appeals and the Wisconsin Supreme Court.[1] First, he claims that the trial court's admission of certain "prior bad act" evidence deprived him of his Fourteenth Amendment right to due process. Second, he claims that the trial judge's refusal (pursuant to the State of Wisconsin's rape shield law) to admit evidence of the victims' alleged prior sexual conduct deprived him of his Sixth Amendment rights to confrontation and compulsory process.

The Wisconsin Court of Appeals considered Mr. Hammer's arguments on September 1, 1999, but withheld judgment and certified them to the Wisconsin Supreme Court for resolution. That court ruled against Mr. Hammer in a 4-3 decision dated July 11, 2000, and denied a subsequent petition for review.

The court has reviewed Mr. Hammer's § 2254 petition, the entire state court record, the briefs submitted by the parties, and the cases cited therein. For the reasons set forth below, the petition will be denied.

---

[1] It is unclear whether Mr. Hammer's first argument was ever presented to the courts of the state of Wisconsin as an issue of federal constitutional law, however. As such, the court may lack jurisdiction to consider it. *Cf. Bocian v. Godinez*, 101 F.3d 465 (7th Cir. 1996) (noting exhaustion requirement that claims be presented to state courts as *federal* constitutional claims prior to federal habeas corpus review and explaining how to determine whether a petitioner adequately presented his claims in that manner). In his answer the respondent "admits" that Mr. Hammer properly exhausted his claims, though. As the argument in question may be equally disposed of on the merits as on the ground of non-exhaustion, the court will not probe further the parties' contention that all claims in Mr. Hammer's petition have been properly preserved for review.

## BACKGROUND

Mr. Hammer stood trial in Racine County (Wisconsin) Circuit Court February 10-13, 1998, charged with four counts of sexual assault. It was alleged that in the pre-dawn darkness of June 29, 1997, Mr. Hammer improperly touched three young guests in the home of Mr. Hammer's parents, where Mr. Hammer resided. The alleged victims were two stepsons of Mr. Hammer's brother, Steve, and one of the stepsons' friends.

Mr. Hammer's position at trial was that he was the victim of mistaken identity. (The alleged assault occurred while the boys were asleep or semi-asleep. Two of the three victims testified that they did not know who touched them; only that they had been touched.) Mr. Hammer argued that one or more of the boys themselves may have engaged in the allegedly improper touching—either in horseplay or as youthful experimentation—if it did, in fact, occur.

During the course of the trial the presiding judge made two important evidentiary decisions. First, he permitted the prosecutor to introduce certain "prior acts" evidence. That evidence took the form of testimony presented by the victim of an alleged earlier indiscretion by Mr. Hammer. The witness testified that a then 18 (or possibly 16)-year-old Mr. Hammer awakened the then twenty-year-old witness in the middle of the night by fondling the witness's penis while Mr. Hammer was a houseguest in the home where the witness was staying. The judge deemed the evidence admissible to show opportunity, mode or method of operation, and absence of mistake—even though the event had occurred several years earlier, and did not involve an underage victim.

Second, the judge prohibited defense counsel from cross-examining the victims about sexual horseplay they may have engaged in the day before the alleged assaults and barred introduction of affirmative evidence of that horse-

play. This evidence, Mr. Hammer asserted, could have shown a motive for the boys to fabricate their allegations,[2] or—by showing a pattern of conduct proximately related in time to his charged acts—could have suggested a different assailant (one of the boys). The circuit court balanced the policies of the state's "rape shield" statute against the defendant's Sixth Amendment rights, and refused to permit the testimony.

The jury convicted Mr. Hammer on two of the four charged counts. Mr. Hammer appealed, arguing that the disputed evidentiary decisions deprived him of a fair trial. Finding unsettled precedent with respect to the proper admission of prior acts evidence, the Wisconsin Court of Appeals certified the appeal to the Wisconsin Supreme Court for disposition.

By a four-three majority, the state supreme court found the contested prior acts evidence properly admitted to show mode or method of operation (thus tending to establish the identity of the perpetrator). This decision was reached as a matter of Wisconsin evidentiary law and no constitutional principles were cited in support of the decision.

The court, without dissent, also upheld the trial court's other disputed decision. The court found that the state's rape shield statute was properly invoked to exclude evi-

---

[2] The court notes that the "fabrication" theory Mr. Hammer presents to this court is significantly different from that he presented to the state courts. As the only issue in a habeas corpus case is whether an earlier court reached a constitutionally unreasonable decision, *see* 28 U.S.C. § 2254, evolving legal theories such as that Mr. Hammer wishes to present seldom, if ever, result in relief, *cf. Pack v. Page*, 147 F.3d 586, 588 (7th Cir. 1998) (noting that changed legal theory suggests, if anything, that the challenged state court decision was actually correct under the previously-presented theory).

dence of the victims' alleged prior sexual conduct. In doing so it acknowledged the important constitutional rights to cross-examination and compulsory process, but noted that neither is absolute. In the state supreme court's view, the rights invoked by Mr. Hammer were little-implicated in his trial, and outweighed by the state's interest in protecting the privacy of sexual assault victims.

## DISCUSSION

Under 28 U.S.C. § 2254, a federal court may grant a writ of habeas corpus only if the relevant state court decision (1) was contrary to clearly established law, as determined by the Supreme Court of the United States, or (2) involved an unreasonable application of clearly established federal law, also as determined by the Supreme Court of the United States. These are high standards. For a state court decision to be "contrary to" federal law, the state court must have applied an incorrect legal test to the facts, or confronted a set of facts materially indistinguishable from those in a Supreme Court case but nonetheless reached a result different from the Court's precedent. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision that correctly identifies the governing legal principle but that applies it unreasonably to the facts of a particular prisoner's case implicates the second basis for habeas corpus relief. *See id.* at 407-08. This, too, is a "demanding standard." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). For a petitioner to obtain relief on this ground, the state court must not only have reached an incorrect result, but a truly "unreasonable" one. *See id.* Thus, if the state court's decision is "at least minimally consistent with the facts and circumstances of the case," the federal court is powerless to grant relief. *Id.* at 335.

Applying these standards to Mr. Hammer's claims, it is apparent he is not entitled to the relief he seeks. He does

not even attempt to meet the standards with respect to his first (prior acts) argument. His brief in support of issuance of the writ on this point calls the trial court's decision merely "questionable" and cites no Supreme Court (or any other) precedent he believes should have compelled a different result. Referencing an argument in his appellate brief he asserts that this decision "when combined with" the other contested decision may have violated his due process rights, but his earlier brief does not cite any federal precedent supporting even this position. As Mr. Hammer has identified no Supreme Court precedent the courts of the State of Wisconsin may have applied unreasonably in permitting the admission of prior bad act evidence against him,[3] relief must be denied as to the claim.

In support of his second (Sixth Amendment) claim, Mr. Hammer argues that the Wisconsin Supreme Court unreasonably misapplied the holdings of *Davis v. Alaska*, 415 U.S. 308 (1974), *Olden v. Kentucky*, 488 U.S. 227 (1988), and *Chambers v. Mississippi*, 410 U.S. 284 (1973),[4] by up-

---

[3] The court wishes to note that it, too, is unaware of any precedent the trial court may have applied unreasonably. As the Seventh Circuit Court of Appeals has remarked:

> [W]hen the state merely fails to limit the prosecution's evidence, the only constitutional principle to which the defendant can appeal is a catch-all sense of due process, and the appeal almost always fails. If the evidence is probative, it will be very difficult to find a ground for requiring as a matter of constitutional law that it be excluded; and if it is not probative, it will be hard to show how the defendant was hurt by its admission.

*Watkins v. Meloy*, 95 F.3d 4, 6-7 (7th Cir. 1996) (internal citations omitted).

[4] Actually, Mr. Hammer argues that the state courts reached decisions "contrary to" these cited cases. As none of the cited cases

(continued...)

holding the trial court's application of the Wisconsin rape shield law to block inquiry into the victims' own sexual activities. The court disagrees.

While the cases cited by Mr. Hammer recognize the importance cross-examination and presentation of favorable witnesses may play in securing the rights guaranteed by the Sixth Amendment, *see Davis*, 415 U.S. at 315; *Olden*, 488 U.S. at 231; *Chambers*, 410 U.S. at 294, none establish an absolute right to cross-examination or presentation of favorable witnesses. In fact, they specifically disavow the existence of such a right. *See Davis*, 415 U.S. at 316 (noting that cross-examination is "subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation"); *Olden*, 488 U.S. at 232 ("a trial court may, of course, impose reasonable limits on defense counsel's inquiry"); *Chambers*, 410 U.S. at 295 ("the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process").

Indeed, the three cases cited by the petitioner were highly fact specific, *see Davis*, 415 U.S. at 318 (finding that "on these facts" the trial infringed the defendant's Sixth Amendment rights); *Chambers*, 410 U.S. at 302-03 ("In reaching this judgment, we establish no new principles of constitutional law. Nor does our holding signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures. Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived [the defendant] of a fair

---

(...continued)
involved materially indistinguishable facts, however, the proper (and likely intended) standard of analysis is that found in the second clause of 28 U.S.C. § 2254(d)(1)—"unreasonable application."

trial."), and did no more than establish a rule that a trial court may not abridge a defendant's cross-examination or presentation of favorable witnesses when doing so would unduly impair his or her ability to present a reasonable defense.

The state supreme court properly identified this rule, *see State v. Hammer*, 236 Wis. 2d 686, 712-13 (Wis. 2000) (citing *Chambers*, 410 U.S. 284 and *Davis*, 415 U.S. 308), and applied it reasonably to determine, *inter alia*, that the evidence Mr. Hammer wished to present was not highly relevant[5] and that his interest in presenting it was outweighed by the state's interest in protecting the privacy of sexual assault victims, as articulated in the state's "rape shield" statute, Wis. Stats. § 972.11. No more was required of the court. *See Pack*, 147 F.3d at 589 (all the Constitution requires "is that courts . . . give earnest consideration to the possibility that excluding evidence under a rape shield law may interfere unduly with the defendant's opportunity to present a defense of innocence"). As the state court's decision did not involve an unreasonable application of Su-

---

[5] The court wishes to note that Mr. Hammer has argued in only the most conclusory terms that the evidence he wished to present was crucial to his case, or even relevant. (Petitioner's brief asserts that the evidence in his favor was "far less persuasive" as a result of the exclusion). Such perfunctory argument provides the court with no basis from which it could conclude that the state court's contrary finding was unreasonable.

preme Court precedent,[6] the court will deny Mr. Hammer relief with respect to his second claim, as well.

Accordingly,

IT IS ORDERED that Mr. Hammer's petition be and the same is hereby DENIED.

A true Copy:

      Teste:

                  _____
                  *Clerk of the United States Court of Appeals for the Seventh Circuit*

---

[6] In fact, no such precedent exists that the state courts could have applied unreasonably. *See Pack*, 147 F.3d at 589 ("Indeed, the Supreme Court has yet to hold that any application of a rape-shield statute is inconsistent with the Constitution, making it particularly hard to say that failure to make a constitutional rape-shield law—which is what [the petitioner] needs in order to prevail—is 'contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States.' ").