NONPRECEDENTIAL DISPOSITION
To be cited only in accordance
with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 14, 2007[*]
Decided December 18, 2007

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 07-2057

| | |
|---|---|
| JAMES STUCKEY, *Petitioner-Appellant,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| *v.* | No. 04 C 8061 |
| DONALD HULICK, Warden, *Respondent-Appellee.* | Virginia M. Kendall *Judge.* |

**O R D E R**

An Illinois jury found James Stuckey guilty of attempted murder and aggravated assault, and the trial court sentenced him to a total of 100 years' imprisonment. Stuckey's conviction and sentences were affirmed on direct appeal and his post-conviction petition was denied. Stuckey then petitioned for a writ of habeas corpus under 28 U.S.C. § 2254. The district court denied that petition but issued a certificate of appealability as to Stuckey's claim that his trial counsel was

---

[*]After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

constitutionally ineffective for failing to interview a witness. On appeal, Stuckey maintains that his trial counsel was unconstitutionally incompetent—for failing to interview that witness and for failing to move to suppress the victim's pre-trial identification of Stuckey. We conclude that the state appellate court's application of clearly established federal law was not unreasonable and its decision was not based on an unreasonable determination of the facts. Accordingly, we affirm the district court's judgment.

The following evidence was presented at Stuckey's trial. On March 29, 1986, three men abducted a fourteen year old girl by gunpoint, raped her, tied her naked to the bumper of a car and dragged her at high speed for one and half blocks and then left her for dead. When the victim was discovered later, she was rushed to the hospital, where physicians observed that the right side of her face had been scraped to the bone and 70% of the left side was gone.

The victim testified that she met Stuckey the day before the assault. He asked if she would work for him as a prostitute, which she agreed to, and he arranged for her to have sex with five men. The next day Stuckey, driving a brown Ford Granada, again asked her to prostitute herself, which she refused to do, but voluntarily got into the car with Stuckey. Later, after she had left the car and was walking alone on the street, Stuckey, his brother and his friend pulled up in the Granada, forced her into it at gunpoint, and took her to a wooded area where they raped her. The victim's father, who also testified, confirmed that he saw her in a brown Granada that day and that he wrote down the license plate number of the car, which was registered to Stuckey's girlfriend, Rose Martin.

While in the hospital, the victim identified the men who assaulted her from a photo array. Although she was covered from head to foot in bandages and could not speak, she identified Stuckey among seven or eight pictures of African-American men by non-verbal gestures. Defense counsel made two oral motions before trial for production of the photographs of the other men in the photo array, but the State could not produce them.

Stuckey insisted at trial that he was with his friends at the Tropical lounge at the time of the attack. Counsel called Lorraine Washington to support his alibi defense. She worked at the Tropical lounge on the night of the assault. According to Washington, her shift began at 7:30 pm and Stuckey arrived at 9:30 pm. Stuckey was never out of her sight for more than a few minutes, she said, and she claimed to have left with him at 4:00 am.

On this record Stuckey was convicted of attempted murder and aggravated assault. His conviction was affirmed on direct appeal, and the Supreme Court of Illinois denied his petition for leave to appeal. Stuckey filed for post-conviction

relief in the Illinois circuit court claiming, among other arguments, that he was denied effective assistance of counsel because counsel failed to investigate or call Rose Martin as an additional alibi witness and failed to challenge the victim's identification of him in the photo array. He submitted four affidavits, including one from Rose Martin. She attested that two days after the attack, she spoke to Stuckey and he said he was at the Tropical Lounge the night of the attack. She admitted that she owned a Ford Granada at the time of the offense but that it had no rear bumper. Finally, she maintained that Stuckey's lawyer never contacted her, although she believed that he knew who she was because when she attended the trial, the lawyer said, "So you must be Rose."

The circuit court, ruling that Stuckey's claim for ineffective assistance of counsel was refuted by the record and not supported by the affidavits, denied his petition. Stuckey repeated his claims of ineffective assistance of counsel to the Appellate Court of Illinois and that court, applying *Strickland v. Washington*, 466 U.S. 668 (1984), denied them on the merits and dismissed his petition. He next petitioned for leave to appeal to the Supreme Court of Illinois—raising only the claim that he was denied effective assistance of counsel because of his lawyer's failure to interview or call Martin—but that petition was also denied. The federal district court denied Stuckey's petition for collateral relief under 28 U.S.C. § 2254, but granted Stuckey a certificate of appealability on the claim that his trial counsel was ineffective for failing to call Martin as a witness.

Stuckey raises several claims on appeal, but he may pursue only the issue for which the district court granted a certificate of appealability—ineffective assistance of counsel. *Boss v. Pierce*, 263 F.3d 734, 738 n.8 (7th Cir. 2001). Stuckey asks us to consider two reasons for ruling that his trial counsel was unconstitutionally deficient: (1) his counsel was ineffective in failing to interview Martin or call her as a witness and (2) his counsel was ineffective for failing to move to suppress the victim's identification of him in the photo array because it was suggestive and unreliable. Although the certificate of appealability identified only the first argument, we may consider both arguments (along with the possibility that the latter is procedurally defaulted) because a certificate of appealability identifying ineffective assistance of counsel encompasses counsel's actions as a whole. *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007).

We begin with counsel's failure to call Rose Martin. Under *Strickland,* to establish a claim that his lawyer was constitutionally ineffective, Stuckey must show both that his counsel's performance fell below an objective standard of reasonableness and that it prejudiced him. *Strickland*, 466 U.S. at 687-88; *Julian v. Bartley*, 495 F.3d 487, 494 (7th Cir. 2007); *Daniels v. Knight*, 476 F.3d 426, 433-34 (7th Cir. 2007); *Raygoza v. Hulick*, 474 F.3d 958, 962-63 (7th Cir. 2007). We review the district court's decision on these questions de novo, *see Julian*, 495 F.3d

at 491-92; *Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005). Stuckey is entitled to collateral relief only if the decision of the last state court to address the claim on the merits—in this case the Appellate Court of Illinois—was based on an unreasonable determination of the facts underlying the claim, or was contrary to or an unreasonable application of clearly established law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d); *Stevens*, 489 F.3d at 890; *Adams v. Bertrand*, 453 F.3d 428, 432 (7th Cir. 2006).

Under this deferential standard of review, we see no reason to disturb the conclusion of the appellate court that counsel was not unreasonable in not calling Rose Martin. Our analysis of a claim of ineffective assistance of counsel always begins with "a strong presumption in favor of adequate assistance, [and] then determines whether these acts or omissions fall outside of the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690*; Rutledge v. United States*, 230 F.3d 1041, 1049 (7th Cir. 2000). If interviewing a witness in an attempt to get exculpatory information would be fruitless, counsel's decision not to do so is not objectively unreasonable. *Id.* at 1050. That is the case here. The affidavit from Martin does not show that she would have been an alibi witness because she does not attest to Stuckey's whereabouts on the night of the attack. To the contrary, the affidavit suggests that calling Martin could have only confirmed the connection between Stuckey and his girlfriend's brown Granada. *See United State v. Pergler*, 233 F.3d 1005, 1010 (7th Cir. 2000) (rejecting claim of ineffective assistance when counsel may have concluded that witnesses testimony would hurt defendant).

We also see no reason to reject the conclusion of the appellate court that the prejudice prong of the *Strickland* test was not met. Even if Stuckey's counsel had called Martin, her claim that she spoke to Stuckey the morning of the March 31st—two days after the crime—and that he said he was at the Tropical Lounge would not have bolstered Stuckey's alibi defense. The conversation did not take place at the time the assault occurred, and would likely constituted objectionable hearsay. Likewise Martin's claim that her car lacked a bumper would not likely have changed the outcome in the case because there was substantial, independent evidence to support the jury's verdict. *Taylor v. Bradley*, 448 F.3d 942, 951 (7th Cir. 2006); *Whitman v. Bartow*, 434 F.3d 968, 974 (7th Cir 2006). As the appellate court pointed out, "the victim's extensive injuries were consistent with her testimony that she was dragged [from a car], and the medical evidence sufficiently corroborated how those injuries could have been inflicted." Additionally, as the court reasonably observed from the trial evidence, "the license plate number obtained by the victim's father was of a vehicle fitting the same description given by [the victim], and that car was owned by the petitioner's girlfriend. . . . [T]he victim's identification of her assailant was highly reliable since she met petitioner a day before the attack and spent a considerable portion of time with him. . . ." Because of the significant

testimony establishing Stuckey's guilt, and the irrelevance of the bumper to the fact and cause of her injuries, he has failed to satisfy the prejudice prong of *Strickland* with respect to his counsel's failure to interview or call Martin.

We turn now to Stuckey's second claim—that his counsel's failure to move to suppress the identification from the photo array was constitutionally deficient. Stuckey did not make this claim in his petition to appeal to the Supreme Court of Illinois on collateral review, and thus it may be procedurally defaulted. Because we can readily reject the claim on the merits, we need not address the question of procedural default here. *See Todd v. Schomig*, 283 F.3d 842, 849 (7th Cir. 2002) (citing 28 U.S.C. § 2254(b)(2)). Stuckey cannot show prejudice because there is no reason to believe that had his counsel made a motion to suppress, the trial court would have granted it. *Thompson v. Battaglia*, 458 F.3d 614, 620 (7th Cir. 2006). Under both federal and Illinois law, Stuckey must demonstrate that the identification was the result of improper suggestiveness. *United States v. Hawkins*, 499 F.3d 703, 707 (7th Cir. 2007). *People v. Brooks*, 187 Ill. 2d. 91, 126 (Ill. 1999). Stuckey does not point to anything in the record indicating that the photo array was unduly suggestive. Moreover, as the appellate court reasonably observed, there is no basis for believing that "even if motion to suppress the photo array had been filed and granted . . . the outcome of the trial would have been different." The victim knew Stuckey and had spent significant time with him on the day before and the afternoon before the attack. This permitted an independently reliable in-court identification and undermines any claim of prejudice. *United States v. Woods*, 233 F.3d 482, 486 (7th Cir. 2000) (holding that failure to suppress the testimony of two witnesses did not prejudice defendant when there was other evidence supporting guilt).

AFFIRMED.